IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| CT&T EV Sales, Inc., | C/A No. 7:11-1532-TMC |
| Plaintiff, | |
| v. | **ORDER** |
| 2AM Group, LLC; 2AM Group Manufacturing, LLC; and Current Electric Vehicles, | |
| Defendants. | |
| | |
| 2AM Group, LLC; 2AM Group Manufacturing, LLC, | |
| Counter Claimants | |
| v. | |
| CT&T EV Sales, Inc., | |
| Counter Defendant. | |

This matter is before the court on a motion for default judgment on the counterclaims asserted by Defendants/Counter Claimants 2AM Group, LLC, and 2AM Group Manufacturing, LLC, (collectively referred to herein as the "2AM Defendants") against Plaintiff/Counter Defendant CT&T EV Sales, Inc. ("CT&T EV Sales"). Two hearings have been held on this matter after which the court took the motion under advisement.

**Background/Procedural History**

This action involves a dispute over imported low speed vehicles ("LSVs") which are currently being housed in a warehouse in Duncan, South Carolina. The 2AM Defendants operate a Foreign Trade Zone ("FTZ") facility in Duncan. This includes the storage and manipulation of imported goods within the FTZ to enable their entry into commerce in

accordance with United States customs laws. In 2009, the 2AM Defendants entered into a joint venture agreement ("JV Agreement") with CT&T USA, Inc., ("CT&T USA") which allowed the 2AM Defendants to distribute and sell LSVs in North and South Carolina.[1] Pursuant to the JV Agreement, CT&T USA and the 2AM Defendants were to import LSVs manufactured in South Korea, store them in the 2AM Defendants' FTZ facilities, and retrofit the vehicles as required by law.

In November 2010, the 2AM Defendants and the CT&T entities reached a settlement agreement regarding outstanding accounts receivable ("Settlement Agreement") which included a promissory note in the amount of $900,000.00 payable to the 2AM Defendants by CT&T USA ("Promissory Note"). The Settlement Agreement provided for interest and the recovery of attorney's fees and costs to the prevailing party if it became necessary to enforce or defend the agreement. The Promissory Note provided that it was secured by some of the electric vehicles in the 2AM Defendants' warehouse.[2] Defendants filed a UCC-1 financing statement in

---

[1] CT&T USA was named as a Third Party Defendant by the 2AM Defendants in their counterclaims. However, on April 27, 2012, these claims against CT&T USA were voluntarily dismissed without prejudice pursuant to the 2AM Defendants' motion and with CT&T USA's consent. (Dkt. # 139).

[2] In their counterclaims, the 2AM Defendants refer to security interests in 220 vehicles. (Answer and Counterclaims ¶¶ 63, 64, 69, 70, 74, and 128). In their motion for default judgment, the 2AM Defendants refer to the note being secured by 199 vehicles (Dkt. # 78 at 2), but state they are seeking to liquidate 220 vehicles acting as collateral for the note (DKt. 78 at 9). Then, in their proposed order and at the hearing, the 2AM Defendants again refer to 199 vehicles with security interests. The Promissory Note does not specify the number of vehicles. It merely states the marketable and saleable vehicles currently stored at 2AM are collateral. It does refer to the collateral described in Schedule A attached to the note, which is a list of 250 vehicles. (Dkt. # 98-1). To add to the confusion, there are two UCC filings in the record. One filed October 28, 2010, with an exhibit listing 120 vehicles which was filed as a court exhibit at the first hearing and another filed January 25, 2011, with an exhibit listing 250 vehicles, which was filed earlier in the record. (Dkt. # 12-1; Dkt. # 103). The court can only surmise that perhaps some of the vehicles were sold or otherwise distributed. Furthermore, it appears the October 28th filing may be in reference to promissory notes which are not directly part of this action. Despite the October 28th filing having been submitted at the first hearing on the default judgment, the January 2011 filing appears to be the one directly at issue in this action.

2

Delaware identifying a security interest in the vehicles. The 2AM Defendants have Manufacturer's Certificates of Origin ("MCOs") for only 28 of the vehicles with security interests.

CT&T USA is a wholly owned subsidiary of CT&T United, Inc.("CT&T United"). By a letter dated February 7, 2011, the 2AM Defendants were notified by CT&T United that the title and rights to all the LSVs in the 2AM Defendants' possession had been transferred to CT&T EV Sales. Specifically, the letter advised "that CT&T EV, alone, now has the legal and equitable title and rights to all of the electric vehicles in your company's possession" and that CT&T EV had also assumed CT&T USA's financial obligations to the 2AM Defendants. Between January and May 2011, CT&T EV Sales made four payments on the Promissory Note reducing the balance due on the Promissory Note to $600,000.00.

On June 22, 2011, CT&T EV Sales filed its complaint seeking a declaratory judgment action as to the title of the LSVs in 2AM Defendants' possession.[3] Currently, the 2AM Defendants have 394 LSVs stored in its warehouse. In its complaint, Plaintiff CT&T EV Sales alleged it purchased the LSVs from the CT&T entities in late 2010.[4] Plaintiff CT&T EV Sales sought, inter alia, an order declaring that it was the owner of the LSVs stored in the 2AM Defendants' Duncan warehouse, staying the state court from entering a judgement against the 2AM Defendants, and compelling arbitration. The 2AM Defendants answered and counterclaimed.[5]

---

[3] CT&T EV Sales received notice that the LSVs were to be sold at a private sale on July 15, 2011, (Dkt. # 12) and sought a temporary restraining order (Dkt. # 9). The motion, however, was subsequently withdrawn as the 2AM Defendants agreed not to proceed with the sale. (Dkt. # 14; 16).

[4] CT&T EV Sales alleged in its complaint that it bought the rights to the LSVs in December 2010, but then in memoranda and attachments filed with the court it states the purchase occurred in October 2010. (Compl. ¶ 27; Dkt. # 8 at 13; Dkt. # 8 Attach. # 2 - Joseph White Aff. at ¶¶ 11–12; Dkt. # 9 at 7, 9).

[5] In April 2010, CT&T USA, the 2AM Defendants, and Current Electric Vehicles, LLC ("CEV") entered into a sublicense agreement pursuant to which CEV was to sell and

On January 27, 2012, the 2AM Defendants filed a motion to dismiss Plaintiff CT&T EV Sales' claims for failure to prosecute and sought an order of judgment in favor of the 2AM Defendants on the issue of the parties' legal rights in the LSVs. On March 7, 2012, pursuant to Rule 41(b), Fed. R. Civ. P., the court dismissed with prejudice for failure to prosecute Plaintiff CT&T EV Sales' claims. The court held in abeyance a ruling on the 2AM Defendants' motion for a default judgment in favor of the 2AM Defendants on their counterclaims. At the direction of the court, on April 13, 2012, the clerk of court filed an entry of default. (Dkt. # 121).

**Default Judgment Standard**

Rule 55(b)(2), Fed. R. Civ. P., authorizes a court to enter a default judgment against a properly served defendant who fails to plead or otherwise defend the allegations. Entry of a default judgment is left to the discretion of the court. *Dow v. Jones*, 232 F.Supp.2d 491, 492 (D.Md. 2002). The Fourth Circuit has a "strong policy" that "cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir.1993), but default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party. *S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005).

---

distribute electric vehicles in South Carolina. In September 2010, CEV filed an action in state court against CT&T USA (and other related entities) and the 2 AM Defendants alleging claims arising out of the sublicense agreement. Plaintiff CT&T EV Sales alleged it purchased the electric vehicles from CT&T USA in October 2010. In December 2010, the CT&T entities, the 2AM Defendants, and CEV entered into a settlement agreement whereby the parties agreed that the state action would be dismissed if the CT&T entities abided by the agreement. When the CT&T entities did not fully meet their obligations under the settlement agreement, the CT&T entities were found to be in default in the state action and a damages hearing was held on June 14, 2011. On July 5, 2011, a $12 million default judgment was filed against the CT&T entities in the state court action which was later set aside. (Dkt. # 49 at 3). Plaintiff CT&T EV Sales attempted to intervene in the state court action, but its motion was denied because CEV stated it was not seeking to assert any claim of ownership in the cars. The 2AM Defendants represented in court that the vehicles at issue in this action are not the same vehicles involved in the state court action.

A court must "exercise sound judicial discretion" in deciding whether to enter default judgment, and "the moving party is not entitled to default judgment as a matter of right." *EMI April Music, Inc. v. White*, 618 F.Supp.2d 497, 505 (E.D.Va. 2009). The Court is to accept as true the well-pleaded factual allegations in the complaint as to liability. *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780–81 (4th Cir. 2001)). However, it remains for the Court to determine whether the unchallenged factual allegations constitute a legitimate cause of action. *Id. See also* 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010) ("it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action. . . ).

If the Court determines that liability is established, it must then determine the appropriate amount of damages. *Ryan*, 253 F.3d at 780–81. Unlike allegations of fact, the Court does not accept allegations regarding damages as true, but rather makes its own independent determination. *E.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir.1999). In so doing, the Court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). In addition, with respect to the character of the amount and judgment, Rule 54(c), Fed. R. Civ. P., provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed.R.Civ.P. 54(c).

## Discussion

The court finds a default judgment may be appropriate as to the 2AM Defendants' counterclaims because the adversary process has been halted due to an essentially unresponsive party, CT&T EV Sales. *Lawbaugh*, 359 F.Supp.2d at 421. As set forth above, the court must 1) determine whether the unchallenged facts in the pleadings constitute a legitimate cause of action, and, if they do, 2) make an independent

determination regarding the appropriate amount of damages.

Initially, however, the court must address another issue: whether the court can order all the relief which the 2AM Defendants are now seeking. The 2 AM Defendants alleged the following counterclaims: 1) Violation of South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §§ 15-36-10 et. seq.; 2) Civil Conspiracy; 3) Violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 et. seq.; 4) Breach of Promissory Note; and 5) Breach of Settlement Agreement. In its prayer for relief, the 2AM Defendants requested an order finding:

> (a) That CT&T-EV is a sham organization and alter ego of CT&T USA set up to avoid the responsibilities of related CT&T entities, CT&T-United and CT&T-USA;[6]
>
> (b) That CT&T-EV was not a bona fide purchaser for value without notice of any of the electrical vehicles housed by the 2AM defendants;
>
> (c) That CT&T-EV has no claim to title in the electric vehicles in 2AM's possession.
>
> (d) That the 2AM entities have a superior security interest to that of CT&T-EV, and CEV as it relates to electric vehicles for which 2AM had a perfected security interest in (220 electric vehicles) and that title for these vehicles be delivered to 2AM;
>
> (e) That the 2AM defendants have no further obligation under the JVA referenced in the compliant;
>
> (f) And that the 2AM defendants have no further obligations under the sales and distribution sublicense agreement subject to the complaint; and
>
> (g) Entry of judgment in 2AM's favor on the counterclaims against CT&T-EV, for the fees and costs associated with this action, and for damages in an amount to be determined by a jury.

---

[6]The court notes that at the second hearing on this motion the 2AM Defendants specifically waived the argument that CT&T EV Sales is a sham entity.

(Dkt. # 31 at 18). In its motion for dismissal and default judgment, the 2AM Defendants requested that the court issue an order finding that the 2AM Defendants' interest in the vehicles is superior to Plaintiff CT&T EV Sales and deeming the 2AM Defendants the title owner of these vehicles. (Dkt. # 78 at 4; 9).

At the direction of the court, the 2AM Defendants submitted a proposed order which was subsequently amended to include modifications requested by counsel for CT&T USA. In this proposed amended order, the 2AM Defendants requested that the court declare the 2 AM Defendants the sole legal and equitable owner of all 394 vehicles in its possession either under the security interest set forth in the JV Agreement or under the Warehousemen's Lien, S.C. Code Ann. § 36-7-101, et. seq.

As the Warehouseman's Lien was not raised in the pleadings, and because such a lien appears to generally operate without court action, a second hearing was scheduled and the 2AM Defendants were ordered to be prepared to discuss under what legal authority the court could order more relief than was requested in the counterclaims; determine the sole, legal owner of all the LSVs with the limited pleadings and parties before it (as opposed to merely deeming that the 2AM Defendants' interest is superior to that of Plaintiff CT&T EV Sales in some of the LSVs); and the applicability of S.C. Code Ann. §§ 56-2-120, 56-19-620, and 56-19-630 to the 2AM Defendants' security interests.

At the second hearing, in regard to the relief requested, the 2 AM Defendants primarily cited to Wright & Miller's treatise on Federal Practice and two cases: *Sarlie v. E.L. Bruce Co.*, 265 F.Supp. 371 (S.D. N.Y. 1967), and *Mauro v. Clabaugh*, 383 S.E.2d 244 (S.C. 1989), for the proposition that if the defaulting party appeared, but subsequently failed to defend, a party is not limited to the relief it initially demanded.

7

Rule 54(c), Fed. R. Civ. P., provides:

> A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.

As explained in *Sheet Metal Workers' National Pension Fund v. Frank Torrone & Sons, Inc.,*, 2005 WL 1432786 (E.D.Va. June 1, 2005):

> "The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award. . . . If defendant chooses not to proceed, liability cannot be increased. This principle seems applicable whether or not defendant appears at the damage hearing and therefore should not turn on when the default occurs."

*Id*. at *7–8 (*quoting* 10 Charles Alan Wright, et. al., *Federal Practice and Procedure* § 2663 (3d ed. 1998)).

In Wright & Miller, the commentators recognized that a problem is presented when judgment is rendered in a situation in which the party appeared but subsequently failed to plead or otherwise defend the action. The commentators concluded, however, that "[t]he absence of any words of qualification or differentiation in the first sentence of Rule 54(c) indicates that the provision is intended to apply to all cases of default, whether they involve a party who 'has appeared' or one 'in default for failure to appear.'" *Id.* (footnotes omitted). *See Fong v. United States*, 300 F.2d 400, 413 (9th Cir.1962); *see also SEC v. Wencke*,

8

577 F.2d 619, 623 (9th Cir. 1978). Furthermore, this conclusion is reinforced by the second sentence in Rule 54(c) which provides that "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Finally, the court notes that the cases cited by the 2AM Defendants can be distinguished. In *Sarlie*, the issue was whether an amendment could be made to the ad damnum clause after a default and in *Mauro*, where the plaintiff actively participated in the damages hearing after default, the court allowed the defendant to amend the amount of damages.

In sum, the court finds that "[f]undamental fairness, required by due process of law, limits the scope of relief, which is, undoubtedly, why Rule 54(c), Fed.R.Civ.P., proscribes that a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *Enterprise Bank & Trust v. Vintage Ranch Inv., LLC*, 2012 WL 1267988, * 2 (D.Ariz. 2012)(internal citations and quotation marks omitted). Here, the 2AM Defendants are attempting to allege entirely new claims, rather than merely an increase in the amount of damages, although they are seeking that too. Therefore, the court limits the relief it awards to the counterclaims previously pled and the relief previously requested.[7] Turning to the pleadings and accepting the facts alleged in the 2AM Defendants' counterclaims as true, the Court must now determine whether the unchallenged factual allegations constitute legitimate causes of action.

---

[7] The court notes that the 2AM Defendants did not plead an amount certain as far as damages. However, at the second hearing, the 2AM Defendants presented new evidence to support claims for additional damages.

**Violation of the South Carolina Frivolous Proceedings Act**

The 2AM Defendants allege Plaintiff CT&T EV Sales brought this action against 2AM Defendants for an improper purpose in violation of the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. § 15-36-10 et. seq. (Answer and Counterclaim ¶ 103). The 2AM Defendants further allege this action "has been subject to a settlement agreement and full release against further lawsuits by Plaintiffs alter ego CT&T USA." *(Id.* ¶ 104.) At the hearing, the 2AM Defendants represented that they were waiving their argument that CT&T EV Sales was a sham entity or alter ego of CT&T USA. Accordingly, the court finds the 2AM Defendants' allegations as to this cause of action are insufficient to constitute a legitimate cause of action for a violation of the South Carolina Frivolous Proceedings Sanction Act.

**Civil Conspiracy**

The 2AM Defendants allege that CT&T USA and CT&T EV sales conspired to complete an illegal assignment of the rights in CT&T USA's assets without obtaining the 2AM Defendants' written consent as required under the settlement agreement and CT&T EV Sales "is a sham and is in fact operates as the alter ego of CT&T USA, Inc., in an attempt to illegally dispose of and/or avoid the liabilities and/or duties required under the JV Agreement and/or Settlement Agreement." (Answer and Counterclaim ¶ 108).

"A civil conspiracy is a combination of two or more persons joining for the purpose of injuring and causing special damage to the plaintiff." *McMillan v. Oconee Mem'l Hosp., Inc.*, 626 S.E.2d 884, 886 (S.C. 2006). To establish a civil conspiracy, a party must show: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3)

which causes him special damage." *Vaught v. Waites,* 387 S.E.2d 91, 95 (S.C. Ct. App. 1989). "The gravamen of the tort of civil conspiracy is the damage resulting to the plaintiff from an overt act done pursuant to a common design." *Cricket Cove Ventures, LLC v. Gilliand*, 701 S.E.2d 39, 46 (S.C. Ct.App.2010).

The record contains no evidence, only speculation, that any of the parties conspired with each other for the purpose of harming the 2AM Defendants. Furthermore, civil conspiracy requires special damages. In this case, other than alleging they suffered "consequential and/or special damages," the 2AM Defendants have failed to allege any special damages. They allege the same damages as they do under the other causes of action. This is insufficient to establish special damages. *See Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 875 (S.C.Ct.App. 2009) ("If a plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of their civil conspiracy claim, their conspiracy claim should be dismissed."). Additionally as noted above, at the second hearing, the 2AM Defendants represented that they were waiving their argument that CT&T EV Sales is a sham entity or alter ego of CT&T USA. Accordingly, the court finds the 2AM Defendants' allegations as to this cause of action are insufficient to constitute a legitimate cause of action for civil conspiracy.

**Violations of the South Carolina Unfair Trade Practices Act ("SCUTPA")**

The 2AM Defendants allege a cause of action based upon violations of the SCUTPA. "To recover in an action under the SCUTPA, a plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary

11

or property loss as a result of the defendant's unfair or deceptive act(s)." *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct.App. 2006). An impact on the public interest may be shown if the acts or practices have the potential for repetition. *Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 466 (S.C. 2004) . The potential for repetition may be proven by showing: (1) the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) the defendant's procedures created a potential for repetition of the unfair and deceptive acts. *Id.* Further, as the Fourth Circuit has held:

> While every private dispute doubtless has remote public ramifications, these cannot be held to satisfy the element of injury to the public interest which is a prerequisite to any recovery under the UTPA. Were the rule otherwise, every ordinary commercial dispute would become a candidate for the extraordinary remedies provided by the Act.

*Omni Outdoor Adver., Inc. v. Columbia Outdoor Adver., Inc.*, 974 F.2d 502, 507–08 (4th Cir.1992). "[A] breach of contract alone is insufficient to establish Defendant engaged in an unfair or deceptive trade practice." *Brown v. Wachovia Bank*, 2011 WL 5024297 * 5 (D.S.C. 2011).

Here, the 2AM Defendants allege that CT&T EV Sales engaged in the following deceptive and unfair acts: undertaking an illegal assignment of rights, title and or interest in CT&T USA's assets, including but not limited to the electric vehicles, without obtaining written consent as required by the JV Agreement and misrepresenting it held the rights to such vehicles. The 2AM Defendants contend these acts were deceptive and unfair because they resulted in this action and would create a windfall if CT&T EV Sales were successful. The 2AM Defendants also recite that these acts have an impact on the public interest in that there is the potential for repetition, have most likely been repeated in the

past, and will continue in the future. CT&T EV Sales may have breached the JV Agreement, but the 2AM Defendants have failed to establish that C&T&T EV Sales engaged in an unfair trade practice in regard to the assignment of title or by asserting its claim to the LSVs by filing this action to determine whether it had the rights to the vehicles.[8] Accordingly, the court finds the 2AM Defendants' allegations as to this cause of action are insufficient to constitute a legitimate cause of action for a violation of the SCUPTA.

**Breach of the Settlement Agreement and Promissory Note**

The 2AM Defendants allege CT&T EV Sales breached the Promissory Note and the Settlement Agreement. To establish a breach of contract, the 2AM Defendants must demonstrate "a contract, its breach, and the damages caused by such breach." *Maro v. Lewis*, 697 S.E.2d 684 (S.C. Ct. App. 2010). "Generally, one not in privity of contract with another cannot maintain an action against him in breach of contract, and any damage resulting from the breach of a contract between the defendant and a third party is not, as such, recoverable by the plaintiff." *Windsor Green Owners Ass'n v. Allied Signal, Inc.*, 605 S.E.2d 750, 752 (S.C. Ct.App. 2004) (internal citation omitted). However, with proof of a valid assignment of contract, an assignee can be bound to certain equities of the contract. *See Welling v. Crosland,* 123 S.E. 776, 780 (S.C. 1924) (internal citation omitted) ("The assignee of a contract is bound by the same equities which existed between the original parties to the contract, having purchased with a full knowledge of the state of things.").

---

[8]Furthermore, it appears the 2AM Defendants' argument regarding CT&T EV Sales' undertaking an illegal assignment of rights without obtaining written consent is based upon the allegation that CT&T EV Sales was a sham entity and the alter ego of CT&T USA. As this argument was waived at the second hearing, the factual allegations in support of this cause of action are no longer viable.

The 2AM Defendants allege that CT&T EV Sales was assigned the Promissory Note and the Settlement Agreement by CT&T USA. Copies of the Promissory Note and Settlement Agreement between CT&T USA and the 2AM Defendants are in the record and the evidence in the record demonstrates that CT&T USA assigned these contracts to CT&T EV Sales and that CT&T EV Sales assumed CT&T USA's obligations under these agreements.[9] Further, the 2AM Defendants allege that CT&T EV Sales breached these contracts by, inter alia, failing to timely remit payments as required. Accordingly, the court finds that the 2AM Defendants have adequately alleged causes of action for breaches of the Promissory Note and the Settlement Agreement and should be granted a default judgment as to these claims.[10] Having determined liability on these two causes of action, the court must determine the amount of damages to which the 2AM Defendants are entitled.

The 2AM Defendants seek an order finding that they have a superior security interest to that of CTT EV Sales "as it relates to electric vehicles for which 2am had a perfected security interest in (220 electric vehicles) and that title for these vehicles be delivered to 2AM" and that they have no further obligation under the [JV Agreement]."[11]

---

[9] In its complaint, CT&T EV Sales also alleged these contracts were assigned to it by CT&T USA. (Compl. ¶¶ 27-31).

[10] However, this is somewhat a moot point because the injury the 2AM Defendants allege as to the breach of contract claims is the same as what it alleges in regard to the other claims. The damages would be identical except that a violation of the Unfair Trade Practices Act provides for trebling.

[11] The 2AM Defendants also seek an order deeming that they have the legal and equitable title to all 394 LSVs in their warehouse. However, the Promissory Note and Settlement Agreement create a security interest in only 199 of the LSVs. Such relief would be improper. As noted above, the argument that liens exist on the LSVs based upon the Warehouseman's Lien is beyond the scope of the counterclaims that were raised in this

14

The UCC defines a "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation." S.C. Code Ann. § 36-1-201(37). S.C. Code Ann. § 56-2-120 (A) provides that: "[a] low speed vehicle must be titled as specified in this title. The manufacturer's or importer's certificate of origin must identify clearly the vehicle as a low speed vehicle and must certify that the vehicle was manufactured in compliance with the equipment requirements for low speed vehicles in 49 C.F.R. Section 571.500. . . ." S.C. Code Ann. 56-19-620 provides that "Unless excepted by § 56-19-610, a security interest in a vehicle of a type for which a certificate of title is required is not valid against creditors of the owner or subsequent transferees or lienholders of the vehicle unless perfected as provided in this article. No other recordation shall be necessary to protect the interest of the lienholder."[12] "A security interest is perfected by the delivery to the Department of Motor Vehicles of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. . . ." § 56–19–630. The 2AM Defendants' filing of a financing statement therefore was not sufficient to perfect its

---

action. Even assuming the 2AM Defendants could have pled such a cause of action in this case, they did not. Furthermore, as far as the court can discern, nothing prevents the 2AM Defendants from proceeding independently under the Warehouseman's lien as to all the LSVs.

[12]Section 56-19-610 provides for exceptions for liens: given by statute to a supplier of services or materials; given to the United States, this State or any political subdivision if such lien is recorded on the title, in a vehicle created by a manufacturer or dealer who holds the vehicle for sale, and attachment liens provided for in § 29-15-20. However, the 2AM Defendants have acknowledged that they are not manufacturers of or dealers in LSVs. The 2AM Defendants' counterclaims assert security interests in some of the LSVs based upon the Promissory Note and Settlement Agreement, and none of these exceptions are applicable to these security interests.

15

security interest in the LSVs. *See, e.g., In re Manufacturers Credit Corp.*, 441 F.2d 1313 (3d Cir. 1971).[13]

While the security interest may have been unperfected, that does not affect the contractual obligations between the 2AM Defendants and CT&T EV Sales. Perfection is only intended to protect a secured creditor from third parties without knowledge. An unperfected security interest is still valid as between the parties as long as it had attached. S.C. Code Ann. § 36-9–201. Accordingly, the court finds that the 2AM Defendants have a superior interest over CT&T EV Sales in the 199 LSVs covered by the Promissory Note and Settlement Agreement.

Further, the 2AM Defendants also seek actual damages for the breach of the Promissory Note and the Settlement Agreement. The court finds the 2AM Defendants are entitled to a judgment in the amount of the remaining balance due under the Promissory Note and the Settlement Agreement. The court finds that the evidence presented at the hearings adequately establishes that the outstanding balance due the 2AM Defendants from January 2011 to March 20, 2012, with interest is $671,483.12.

In addition to the balance due under the Promissory Note, the 2AM Defendants are also entitled to legal fees associated with defending this action as provided for in the Promissory Note. The 2AM Defendants have requested $49,991.25 in legal fees in

---

[13]Likewise, S.C. Code § Ann. 36-9-311 provides that the filing of a financing statement is not necessary or effective to perfect "a security interest in property subject to Chapter 19 of Title 56 (Protection of title to and interests in motor vehicles)" unless the goods are held for sale by a person who is in the business of selling goods of that kind and, again, the 2AM Defendants have stipulated that they are not dealers in LSVs.

defending this action.[14] Despite the default of the Plaintiff in this action, the court nevertheless must review an attorney's fee request independently for reasonableness. Such a review necessarily begins with the determination of the so-called "lodestar figure." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (*citing Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008) ("In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.")). "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Grissom*, 549 F.3d at 321 (internal quotation marks and citations omitted).

In analyzing the overall reasonableness of a fee request, the Fourth Circuit has "instructed that a district court's discretion should be guided by the . . . twelve factors" established by the United States Court of Appeals for the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and

---

[14]Furthermore, at this time, the courts notes it is inclined to deny the 2AM Defendants' request for future attorneys' fees in regard to the liquidation of all the LSVs "and like matters" in the amount of $30,000, as the court would be unable to conduct an appropriate analysis as set forth herein.

>   length of the professional relationship between attorney and
>   client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir.1978). *See also* LR 54.02. (setting forth requirement that petitions for attorney's fees comply with *Barber*).

The 2AM Defendants have not submitted a proper petition for attorney's fees. Accordingly, the 2 AM Defendants are instructed to submit within ten days of the entry of this order a proper petition for attorney's fee in compliance with the Local Rules. Failure to timely do so will constitute a waiver as to the attorney's fees.

The 2AM Defendants also request damages for storage related costs (i.e. maintenance, utilities, dedicated labor) in the past and during any liquidation period and duty charges. As the 2AM Defendants note, S.C. Code Ann. § 36-7-209 regarding Warehouseman's Liens provides for such damages. However, as discussed herein any claims or requests for relief pursuant to the Warehouseman's Lien statute are not properly before the court.

Based on the foregoing:

1) The court grants the 2AM Defendants' Motion for Default Judgment against the Plaintiff CT&T EV Sales only on the causes of action alleging breaches of the Promissory Note and the Settlement Agreement, as set forth in this order.

2) The court finds that the 2AM Defendants have a superior interest to the Plaintiff CT&T EV Sales as it relates to the 199 low speed vehicles for which the 2AM Defendants have a security interest pursuant to the Promissory Note and Settlement Agreement.

3) The 2AM Defendants have no further obligation under the Joint Venture Agreement, the Promissory Note, or the Settlement Agreement.

4) The court awards the 2AM Defendants damages in the amount of $671,483.12 to be offset by any proceeds realized if the LSVs are sold minus reasonable expenses and other appropriate fees associated with any liquidation.

5) The 2AM Defendants are ordered to provide, within ten (10) days of this Order, a petition for the requested attorney's fees in compliance with the Local Rules. Failure to timely do so will constitute a waiver as to the request for attorney's fees.

**IT IS SO ORDERED.**


s/Timothy M. Cain
United States District Judge


May 2, 2012
Greenville, South Carolina